So we were sitting downtown and we were like, why don't you never open it now? So, it's kind of the story is that, when the fire department is doing this  they're not just running five or six units on the fifth and last day, but five, six units we're taken over, it's like, what the hell no, and I think that's really the story of my justice movement. So I just sort of hung it all together and I think that's really the story of my justice movement. Mr. Nagel, whenever you're ready. Morning Your Honor, may it please the court. My name is Thomas Nagel and I represent the plaintiff in the Pelham's case, Laguna Hermosa Corporation. This is a resort operation on Lake Darius in Napa County, California. One of the prime issues before this court is whether or not the term required as it is contained in public law 96 point, excuse me, dash 375 can be applied to a situation where the United States actually retains and uses permanent facilities on a resort after the expiration of the concession agreement. So how would you have us define require? It's, you're dealing with, you would have it apply when the government is silent, the government says nothing. That's correct, Your Honor. Don't you think that's a little inconsistent with the normal definition of it says the U.S., the statute says the U.S. may require, requiring one's general mind would be that the government has to affirmatively do something in order to satisfy that. Are you saying that the government has to do by doing nothing can satisfy the require requirement? Your Honor, I'm not saying, simply I'll give an example of it. If the government on the day before the concession agreement is going to expire, looks over onto the property and says to itself, or maybe to the next concessionaire who's bid on the concessions, I don't want anything over there. And then the next day, when the concession has expired, the government walks onto the property and says, thanks for abandoning all this. I can turn it over to, in this case, Pence's who received the award. And it's no different than actually what they're saying in the Fraser case, which preceded this case, that Fraser was talking about select and pay. And here we're talking about retained and use being the same thing. Because if you don't look at it that way, somebody is getting a windfall. Somebody is getting unjustly enriched at the expense of the concessionaire. Because back in 1980, when the concessionaire people came to Congress, they came to get protection for the facilities that they built at the lake. I'm just trying to, in your argument, are you kind of drawing a distinction between permanent facilities that are removable and those that are not removable? If something were removable, then I think you'd have less of a concern, right, in terms of what the government's required to do. Is that the nub of it? It's that this is, as a practical matter, facilities that are permanent and not removable in need for specific attention. Your Honor, pretty much they are because they're infrastructure. Infrastructure that is being used today after the expiration of the concessionary agreements. For instance, if you went to the resort today to get off a highway to get into the resort, you're gonna have to use a road system that is in place to provide water and sewer and sanitary facilities for the public. You're going to have to use the facilities that are there today. And those are the things that were sought protection of back in 1980 when this legislation passed this public law, 96.375. Is it this part of the give and take, though, being a concessionaire? Your Honor. Knowing that you're gonna use this government property and to be able to benefit from the value of that use, you're gonna have to build facilities. And then the prospect is you're gonna have to either leave them behind or cart them off at some time. Your Honor, if that option was available to cart off anything that could be carted off before the expiration, we're getting back to what Judge Post's example, being infrastructure not movable or other category. Are you asking for a rule that applies to everything or are you just asking for infrastructure? What are you asking for? Just what is being retained and used by the government after the expiration of the concessions. This concession, we're going to most of it, expired back in June. Well, what about you have a trailer, a trailer that has been taken off its wheels and put on blocks? And the blocks and it's tied down to the blocks. So it's a permanent picture, right? Now that's something you could crank up and put the wheels on and haul it away if you wanted to. And that was done, Your Honor. Excuse me? That was done, Your Honor. I'm trying to get a grasp on, you're saying that the government, if something is left there and they use it, well, if you left that trailer there, you didn't take the trailer I'm talking of away. Is the government entitled after you've left to either use it itself or let the new concessionary use it? No. Why not? Because. It was movable. You said you could have moved it. If I, my apologies. Yes, of course. Anything that can be moved out of there was and did get moved out of there. And in fact, it was over a period of a year and a half. It's like something you can take a house apart. You can take down a structure. You can crank up a house and put it on wheels and move it. Correct. Right. It is difficult to move a, I suppose you could dig a cistern out of the ground. And it's very difficult to move a road that's been paved and put down into the dirt. That's for sure. That's correct. Is that the only thing you're talking about? Well, no. In addition to the road, there's retaining walls, there's erosion control systems, there's sanitary sewer systems, there's water, freshwater systems. They're all there to operate the resort for the public. Did you read the government? Government says you could have either removed or destroyed these things if you'd wanted to. So if you just want to make certain that the government wasn't going to be taking advantage of this, presumably the government wouldn't have mined if you'd destroyed, chewed up the road. You said, if the government's right, I'm going to ask you, if you have the right to destroy, then you can say, guess what? You say to the government, you want to ask, I mean, do you want to exercise your right to require the road? And they say, no, we're not going to do that. And you say, well, you know what you're going to get? I'm going to get a bulldozer out there and tear the road up. And so the new concession, they say, well, don't do that. And do you have the power to destroy if it's your property? We, I would, I advise, I represent the client at the time, advise them not to commit waste at the expense of the public. So no, I would not. The threat to destroy may well cause the government to say we require you to leave it because the new concessionaire has to have a road or has to have a cistern, has to have bathrooms. So you just say, well, I'm going to, and you play a game of chicken right now until the hour before it's terminated and you blow up the bathroom. Well, first of all, there wouldn't be any time to do that in that one day, Your Honor. But basically, this was not built in a day and it wasn't vacated in a day. Blow a few up, you know, shot across their back. To blow a few up, Your Honor, would take the movement of 500,000 cubic yards of material, which was requested of the government. Would you like us to return this to its original state? And the government said, no, you can't. So this takes me back to my initial question to you. As a concessionaire, in order to get full benefit of the value of the concession, you built these facilities. You decided, I want to have a retaining wall, look nice, that'll attract customers. And you did so knowing that at some point you were either going to have to cart it off, destroy it, or leave it behind. Your Honor, we didn't feel that after the passage of the public law 96-375. We felt there was protection in there because not only was it built in the 50s, it was continually improved upon it. This wasn't just to look nice for the public. The government required it to be up to date. And so money was spent all the time, every year on it, knowing or thinking that they would be reimbursed for this when the government, when the concessions ended, if they did not get the bid, which they did not get the bid. And I'm just asking the backstory here. Your client had this concession for 50 years, right? Yes, Your Honor. Was there a continually, I mean, did they, what chunks of time were they awarded the concession? Did they have to continuously go back and re-bid, or was this something new and different than that? In fact, the public law 96-375 gave extensions up to the year 2008. They were 10-year extensions, Your Honor, from 1980, basically. And so they were not re-bid, no. They gave them that comfort level that they could be there for that particular time. Well, that may have been what Judge Rayner referred to as sort of a trade-off. That may have been what Judge Rayner was referring to in a trade-off in all of these scenarios. And there was a trade-off that was to the advantage of the current concessionaires in the passage of this law. Was there not? As far as re-bidding, yes, Your Honor. Are the terms of your particular contract of record in this case? I don't know. There was testimony, for example, about a contract for Markley Cove, which I think is nearby. Yes, Your Honor. And I think that, so there's testimony as to that one. I just was curious to know whether your actual contract is in the records, and we can see it. No, there were, actually, in the Fraser case, there were four different resorts that brought that. Actually, it was a pre-award bid. I want to know the case. Okay. And whether it was in that record. I was not the attorney of record at that time. The reason why I'm asking is, in the Markley Cove contract, the contract says, facilities not removed by the concessionaire within 180 days after expiration shall be deemed to have been abandoned by the concessionaire. That's in their contract. Yes, Your Honor. I think the contracts were different, because I also had a client up there at Steel Park, and he had a different contract. And, in fact, I think Markley Cove is- In this case, you're not making any tough argument based on the contract, are you? No. In fact, going back to the Fraser case, wasn't your property rights, or the property rights of your client, weren't they fully litigated in the Fraser case? I don't think so, Your Honor, because what was not litigated was whether or not the term require could include a selection and pay, which came out of Fraser, to be retention and use by the new concessionaire. It just seems that you're upset that the government's using the property. Let's say that they weren't using it. Would you be here before us? If there was no one using it, I wouldn't, I could not be here before you. I'm here before you to say that the government is using and requiring that property, not that it's gone fallow. Wasn't that issue litigated before the Fraser court? It was not litigated, Your Honor. What happened in Fraser, it stopped short of that, but they did define rights of what the United States still had as option by the select and payment. That's what I mean. So the rights as a concessionaire to ownership of the facilities, that was an issue before the Fraser court. It wasn't decided, the timing of it was not decided. It was not decided that at the end of the concession, the property immediately reverted to the United States or became a manhood effect. There was no timing in the statute. The timing is different here because you're here before us as a ex-concessionaire. In Fraser, you were a concessionaire, but yet the legal issues, I'm talking about just the legal issues, those were litigated or there were before the Fraser court. There were some, but the fact that retention and use was not decided in Fraser. It wasn't before the court in Fraser. Judge Bush heard this. She also heard Fraser, but it was this case then. Well, isn't your argument that that issue simply wasn't right because it hadn't happened yet? Well, it's true it wasn't right, but as again, I- It would have been an advisory opinion if it had been issued because it would have issued on a set of facts that hadn't happened. I mean, if that issue had actually been adjudicated  well, if and when the concession comes to an end, and if and when the government doesn't require you to leave the bank, then- The bank. But that's not what the decision said. I agree with you. I want to reserve the balance of your time. Thank you. Mr. McFadden. Thank you, and may it please the court. My name is Lane McFadden from the United States. Laguna Hermosa, sorry, Laguna Hermosa knew as it invested in these permanent facilities on Bureau of Reclamation property. Statutory interpretation case, right? Yes. And we have a situation, we even have a concession from the government in an earlier oral argument which I realize is the binding, but in an earlier oral argument, the government recognized that there was a peculiar problem with the road, real permanent fixtures, right? What's wrong with an interpretation of this statute that says with respect to infrastructure, permanent structures, roads, sewers, this sort of thing, that are really not movable. They're destroyable, but they're not movable. That there is an implied requirement that they remain simply because they're there, if they're being used, but in the concession. That interpretation is- I'm going to separate the notion of something that's actually removable. If it's removable, then tough luck, and you didn't remove it, you abandoned it. But as a matter of statutory interpretation, what's wrong with what I propose? There are a number of problems with that, Your Honor. One is that the statute states, it discusses permanent facilities, making no distinction between those that are removable and non-removable. And as a factual matter, they are all removable, as Your Honor has noted. No, but the word permanent, if you read our patent cases, you'll know is ambiguous. Because we don't know what is permanent. Is something bolted down permanent? Maybe not. Something's cemented down, yes. So, there's room for interpretation of what a permanent structure is. Well, we don't challenge- And I gloss it exactly the same way. It's permanent if you can't remove it. So, we highlighted a different problem with the interpretation. The court's prior opinion in Frazier, it was affirmed by this court, sort of describes the world of possibilities. They can take it with them, or they can leave it behind once their contract expires. Then there is a third option, which is when they try to take it with them, or state their intention to take it with them, and the government requires them to leave it there. At that point, compensation is due. All of this presumes that this is happening at a time when they could remove the permanent facilities, which could only be during the time when they have a contractual right to enter onto the property. Can I just step back a minute, just to make sure I understand what's going on here? If it's a permanent facility of one of the kinds that Judge Clovenger was referring to, in other words, it's a road. I mean, it's of no value to move it. It's just disruptive, whatever. What scenario is there in which the government would require that they stay there, and therefore have to shell out money, as opposed to never requiring under your definition of requiring? Why would the government ever choose to pay the concessionaire when he knows there's no way the concessionaire can get this stuff out anyway? Well, maybe that's possible with roads. I have to say that in this case, the government did ask them to remove the roads. And in fact, the only part of the property that is now publicly accessible is accessible on a part of road that was laid by someone else. So the government did require them, ask them to remove the roads. How were they to remove the roads? They were to break it up and put it in the back of a dump truck and haul it out, just as the government did at government expense after the contract expired. I mean, I don't want to get too far outside of the facts as pled in the complaint, because those control this court's opinion in this case. But I do want to let the court know that what actually happened after the contract expired, this is not in the record because no facts were available. Well, no, but my hypothetical went to when the government wants the road. If the government wants to keep the road and they feel like it will be useful and it will save them a lot of money. Then the government can send a letter that says, do not destroy the road in the process of removing things attached to it. And that satisfies the maybe choir, and then the government's going to have to pay up. But if it's something like a road that the concessionaire is never going to be able to use again, and is of really no value when taken apart to the concessionaire, doesn't the government realize that and say, well, if we choir him, we're going to have to pay for it. If we just say nothing, then he's going to have to leave the road anyway, because he doesn't really have a choice. And so why would the government as a prudent consumer, which we all know it is, why would the government ever require the removal of something such as a road? Well, for the practical reason I stated in the process of removing other pieces of the property and other parts of permanent facilities, those roads might very well be rendered unusable or expensive repairs might be necessary. They might drive heavy equipment in as they're moving out. Don't fight the resigns. Take a facility that is working perfectly, water purification system or something, a toilet, the sanitary stuff is working just beautifully. And it is something that you know that the concessionaire is not going to remove. It doesn't have no purpose to remove. So why on earth would the government ever say, please leave that there. I want you to leave the plumbing facilities in place. Your Honor, there's concern that the government might gain a windfall. I mean, they would say that in the instance they want it left in place because they would want it left in place intact and in good working order. They don't want to pay for it. They don't want the wires removed. They don't want the price. Brand new bathrooms. The concessionaire was dumb enough to put a $5 million set of bathrooms at the dock in the last year of the concession. It's fabulous. In fact, the new concessionaire is going to pay more to the government for the concession because of the bathrooms. Everybody on the lake wants to use those bathrooms. Why on earth would the government require Laguna Hermosa to leave those bathrooms there? To protect it from being partially dismantled. Your Honor, respectfully, they very well might. And in the instance that they don't, I think it's a mistake to characterize this as the government attempting to gain a windfall. That concern was addressed by Congress in 1980 when Congress enacted the statute to prevent the Bureau of Reclamation from terminating these contracts early and kicking them out and keeping their property. Have you conceded in your brief, and maybe you'll try to take it back, that the landowner can destroy this bathroom I just talked about if he wants to? I concede that now, yes. So isn't your ruling just going to lead to a very unfortunate set of circumstances in the concession where the concessionaire is going to go out with the jackhammer a couple of months before the concession is over. They know they've lost. Somebody else is going to say, unless you tell me that you want me to leave these toilets here, we're going to start tearing them down. And the governor's thinking, oh my God, the new guy that's bidding on them is bidding because he wants the toilets. And if this incumbent guy wrecks the toilets down, we're going to have to build the toilets or something. So you don't want him to jackhammer the toilets. He has to jackhammer up a few of them to get you to come to the bargaining table. And you come down to the bargaining table because if he jackhammers them all up and just leaves the trash there, you're going to have a real problem. Isn't that what your rule is going to drive practical business people to? It could drive practical business people to it. The reason it will not is because the statute addresses these specific contracts at Lake Berryessa only. And these contracts were rebid precisely because the government wanted all of this. It's never happened anyplace else in the world because these are the only contracts that are involved? Yeah, the statute is specific to Lake Berryessa and these properties. And more to the point, it was enacted in the context of the government trying to evict these resorts and get rid of all of these permanent facilities. The government routinely told Laguna Hermosa to remove all of these permanent facilities before its contract expired. Why would it do that? They're not usable? They're not up to code. They were put up sort of an ad hoc basis. A lot of the erosion control systems she's talking about are- That brings me to my next question. They required them to remove them. Then why is the government using them now? The government, Your Honor, is not using them now. That is simply an inaccurate, factual statement in the complaint. We accept it for purposes of the complaint because the case is before you on a motion to dismiss. You didn't deny that in your answer, did you? No, Your Honor, we filed a motion to dismiss on the pleadings in response to the complaint. But you didn't deny it in your complaint. I mean, in your answer. I don't believe we filed an answer, Your Honor. But if that's the case, you'd win anyway, right? I mean, even if this case went forward, what you're suggesting is there's no damages. We haven't used them, so there's no current value. There's no market value to the facility. That's absolutely right. I mean, on a hearing on damages, we would certainly win. But the question before you was whether they've actually pled any action by the government that could conceivably have required them to leave their permanent facilities behind, and they haven't. We couldn't take any such action after Frazier, after their contract expired, because they couldn't have removed those facilities. They didn't have the contractual right to enter onto the property, and they never pled that they had said they wanted to remove them, that they were removing them. All of this is missing from the complaint. What they have to plead is, we intended to remove these permanent facilities, and the government did something that prevented us from doing that. Can you address the issue of issue for Frazier? Yes, Your Honor. The claim that I just described to you arises out of Frazier, but Frazier addressed in the context of four different concessionaires, then current concessionaires presenting a bid protest, was what the world of their property rights was, as expanded by public law. But did the court in Frazier find that Laguna had abandoned the property in question? It did not, did it? It did not, no. And so, isn't the abandonment issue that was not decided in Frazier appropriately not thrown out here on the question of issue for Frazier? Well, the Court of Federal Claims here read its own previous decision to mean that abandonment occurs at the point where your contract expires, and you have left permanent facilities behind. That issue was not resolved in Frazier. That's an issue of this Court, and the facts in this case, right? Well, if that, if, Your Honor, reach Frazier that way, I guess. I saw you shake your head. Is that a shaking head, yes, I agree with you? I'm agreeing with you in the alternative. I still maintain that that is precluded by Frazier, that Frazier says abandonment occurs. Did Laguna Hermosa have a free and fair chance to litigate that issue in the previous case? Yes, Your Honor, because. Really? Because there'd been no abandonment. There had been. It hadn't happened. They did not have a full and fair chance to litigate the question of whether they were going to abandon the property. It would have been an advisory opinion if the judge had said in that case, and by the way, when the contract comes to an end, right? When it comes, if and when it comes to an end, then you're abandoned. Well, the Court. That's a future act. The Court didn't have to make that statement because it made the broader statement that when the contract comes to an end, and the government has not at that date required you to retain your facilities, you no longer have any residual right to compensation, which has been the question raised by this point. Then they have come back to this Court now to say that events occurring after that date might entitle us to compensation under some interpretation of the statute, but that is completely foreclosed by the prior opinion in Frazier. They have no residual property interest in these roads, in some buried sewage line, in the sewage treatment ponds that the government has had to remediate. They no longer own those properties. Public Law 96-375 was passed against a background of well-established law that says that ownership of improvements passes with title to the land. And Congress said, well, we'll provide some additional protection in the event that the government wants to keep properties that you might want to remove, your own compensation. And otherwise, while you're the current concessionaire, this is your property. We make that clear. Is this a private rule, or is this just a part of a broader statute? It's part of a broader statute, and it's one in a series of statutes addressing this particular area and this particular reclamation property, which had, since 1959, been held to be used in violation of the Bureau of Reclamation's public use plan for the area. But it took- A water reclamation series of acts, correct? That's right, that's right, Your Honor. And this is sort of the tail wagging the elephant. And as Your Honors pointed out, part of the additional protection that was given these property owners in 1980 was that they got two 10-year extensions on their contracts to get the full value and additional value from these permanent facility investments that they made as a business investment in their contract, which has always had an expiration date. And even 20 years past its original expiration date, that date has never been a surprise to Laguna Hermosa or any of the other concessionaires. What do you do with a situation that hasn't been decorated by the facts outside of the record that you have decorated the tree with? What do you do with a situation where there's a road that is the only way to get off highway so-and-so to get down to the facility, and the road is in fine shape, and the new concessionaire has said to the government, I want to use that road, and the government says, well, we think it's a good idea for you to use that road, and the government says, well, we're not going to tell the outgoing concessionaire that we require them to leave the road here. Your Honor, the government wouldn't do that because it would be part of the plan. Excuse me, I've stripped off the Christmas tree, all this ex-record stuff that we fed in here to prejudice my mind. I'm trying to get back to the cases in front of us. All this talk you gave us about how the government said, you know, tear it up, get rid of it, we don't want it, that's not in the record, right? Right. Right, and that's poison. I didn't want to know that. I apologize, Your Honor. I want to know the answer to the hard case which belongs in front of us, which is the plaintiff says there's a road here, right? And the plaintiff says the government has said I'm going to use the road, or the concessionaire is going to use the road. That allegation was not denied. That's the case in front of us. That case, Your Honor, we don't believe is hard because in the normal event, that road would own to- It comes back to the statutory interpretation that you're suggesting that we might say in a circumstance such as that, we might say, well, a permanent facility, that's a hard thing to decide whether it is, and we just say, well, if it's a situation where the stuff is removable, then either remove it or abandon it. But if it isn't removable in a real world sense, and if the government's going to use it, pay. And I propose that as an interpretation of statute. I didn't get any answer out of it, except, well, you don't have to worry about Judge Clevenger because that's not the facts of this case. May I offer a statute-based response to Your Honor's question? The statute does not provide a right to compensation for use by the government. It provides a right to compensation when the government requires that the facilities not be removed. That is the action that must be pled. And that action is not pled. There is nothing in the complaint that says that the government took any action, made any statement that required them not to remove any permanent facility, road or office. Your adversary's argument is that silence plus use is equivalent to requirement. And why can't we interpret the statute that way? Because that is not consistent with the definition of require that they put for, or the court's definition in Frazier. The intent was to have some compensation. There's no question about that from the statute. So I go back then to the presiding judge's argument, and I say, well, in a case where the facilities are permanent, they can't be removed, and the government wants them to be used by itself or by the next concessionaire, the government will never. I mean, I hope the government will never say, we require them to stay, because it's Clevenger's money they're gonna be spending. They get free infrastructure by keeping their mouth shut. So when you say that can happen under the statute, clearly, and you had no response to the presiding judge's other than the fact, yep, that can happen. And you say, well, knowing that, we can construe the statute to say, if facilities are permanent, and the government wants to use them and does use them, then they have required them to be to be stayed. Your Honor, that extends the text of the statute past what it provides compensation for. I think it's inconsistent with the prior decision in Frazier. It provides compensation for any benefit the government might get, which is not how the statute is drafted, or what it was intended to do. What do you mean, any benefits? You're just suggesting that because the government might drive on the roads after they leave, they would be entitled to compensation under the public law. No, no, this is impractical. We're talking about leaving the road in place as ingress and egress for the use by the new concessionaire, whether it be the government itself or somebody on the consulate. But let me add to Judge Clarenger's scenario, because I read this statute maybe in a different fashion and consistent to what he's asking. And that is there's two ways that the government has to, or rather that the concessionaire gets compensation. One is if the government requires that the permanent facilities not be removed, and then they pay for fair value. You agree with that? Yes. Then the statute goes on and says, or, or, or, different scenario now. Or if a new concessionaire assumes operation of the concession, they require that the new concessionaire pay fair value for the permanent facilities to the existing concessionaire. So if you have a new concessionaire that steps in, then the government requires that concessionaire to pay fair value. Your Honor, that argument hasn't been made. No, but the argument or the interpretation of the statute has been brought up. I'm looking at this and in this situation, and fitting with Judge Klaver and Judge Lana questioning, you have a road, you have a new concessionaire in the property, correct? In theory, yes. There's nothing built there. No, but there's a new concessionaire. And that concessionaire in theory is going to utilize or enjoy the retaining walls. There's docks out there, there's a marina, there's slips, there's sewers. I mean, if the new concessionaire steps in, doesn't the statute say that the government should require that the old concessionaire get compensation for that? We, no, we have read it to be that the or means that compensation will be provided by the concessionaire or by the government. Not that these are two wholly separate factual scenarios in which the statute provides compensation. But I want to reiterate that they're relying only on the first half of that provision. We're trying to figure out how the statute works. If you've got this permanent facility that wasn't taken away, and it's very useful, and the government is going to require that it not be removed, okay? But the new concessionaire is coming in. They may say, we want to require the concessionaire wants to use it. So at that stage in the game, the concessionaire is out of pocket,  The new concessionaire. The new concessionaire. Yes. Yeah. And so the government, if indeed in your fact situation, it is some type of a permanent facility that the new concessionaire is going to use, then it doesn't cost the government anything to read, require the way your adversaries like to read it, because the new concessionaire will pay for it. That's right. I don't want to suggest that that means that some injustice has been done or that there's been some gamesmanship here. The new concessionaire, if the new concessionaire were to use those facilities, that would be part of the new concessionaire's bid. That would be part of the conceptual plans they would submit to the government prior to awarding it. All of this would have occurred long before the new concessionaire stepped onto the property. There would be no way to keep secret the desire of the new concessionaire to use any of these permanent facilities, because that desire would have to be incorporated in its bid. Well, but the new concessionaire is in a position to feather the government's nest with a higher price than it would otherwise pay if it isn't forced to pay for the infrastructure. But that's even more true for the current concessionaire, which could bid to get a new concession and continue to use the permanent facilities on that property, which it had invested and it could probably, presumably, make best use of as it had designed it. I mean, I don't know why this would inure specifically to the benefit of someone new coming into the property, more so than to the concessionaire that's already there and has a chance to bid on a new contract when its current contract expires. I think we've gone substantially over in light of the number of questions, so thank you for your argument. We'll turn back to Mr. Nagel and we'll give you an additional four minutes if you need it, in addition to the two minutes you would like to reserve. Thank you, I don't think I'll need that. With permission of the court, I would like to read. From the oral argument in Fraser, when Judge Covington pointed out there was a problem. Is this something in the record? Is this in the appendix or not? Yeah, it is, Your Honor. It's in Joint Appendix 34. Thank you. Quote, and when you turn to the larger question, Your Honor, obviously if the roads are going to be used, if this is an area where the government believes that this natural land should have roads, then they'll be paid. There will be compensation for it. They'll want the roads there. If it's a situation where the government has decided that the area should no longer have a road on it and should no longer have that kind of infrastructure there then indeed there is no compensation for that property. And also, Your Honor, I file a motion to augment our joint appendix. And there's on page 33, which is the new page 33, I motion to the court to read. There was a definition, Your Honor, by the United States about what a permanent facility was. And that is on page 33. So I could read that. Quote, and that specific definition is, quote, permanent facilities are defined as fixed assets which are any structure, comma, fixture, comma, or capital improvements permanently attached to the federal estate. And I suggest in closing, Your Honor, that if in fact the U.S. would exercise this option to require not to move anything on the property, it would do so only because they intend to use it. And here, just by saying nothing, they still intend to and they have retained and are using. And I thank you, Judge Cleverly, for not going into the facts. I'm not going to rebut any facts here. I'm assuming that the pleading is taken as true and correct. And I would like to thank this court and wish you a happy holiday season. Thank you. Case is submitted.